**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**MENYUON MILLER**                                    **CIVIL ACTION**

**VERSUS**                                            **NO. 20-2508**

**TARGET CORPORATION OF MINNESOTA**                   **SECTION "B"(2)**

## ORDER AND REASONS

Before the Court are plaintiff's motion to remand (Rec. Doc. 5) and defendant's opposition (Rec. Doc. 6). For the reasons discussed below,

**IT IS ORDERED** that the plaintiff's motion to remand (Rec. Doc. 5) is **GRANTED**.

## FACTS OF THE CASE AND PROCEDURAL HISTORY

On December 18, 2017, plaintiff Menyuon Miller ("Miller") tripped and fell inside defendant Target Corporation of Minnesota's ("Target") store located in Harvey, Louisiana. Rec. Doc. 5-1 at 1. Plaintiff alleges to have suffered injuries to her left ankle, hip and lower back as a result of the fall. *Id.*

On November 5, 2018, plaintiff filed suit in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana. *Id.* In her complaint, plaintiff alleged that her individual damages exceeded the specific amount of damages necessary to establish the right to a jury trial pursuant to Louisiana Code of Civil Procedure article 893. Rec. Doc. 1-6 at 3. Further, plaintiff alleged her damages to include past, present and future physical and mental

1

pain and suffering; past and future medical expenses; lost wages and loss of earning capacity. *Id.* at 4.

According to the notice of removal, the allegations set forth in the state court petition were such that it was not readily apparent that the action was removable at the time of its filing. Rec. Doc. 1 at 2. Thus, defendant commenced discovery and served written interrogatories and requests for documents upon the plaintiff. *Id.* at 2-3.

On February 5, 2019, Target received Miller's answers to Interrogatories and Responses to Request for Production of Documents, indicating that plaintiff's lower back and knee pain was initially treated with physical therapy and exams through November 5, 2018. *Id.* at 3. An MRI of Miller's lumbar spine reportedly revealed an L5-S1 torn annulus and herniated disk, and another MRI of her left knee reportedly showed past meniscus repair and patellofemoral left knee malalignment. *Id.* Miller's answer further disclosed that she started receiving treatments at Louisiana Pain Specialist on May 21, 2018 for her back pain. *Id.* The assessments revealed that Miller suffered from chronic pain syndrome, spondylosis with radiculopathy lumbar and osteoarthritis of her left knee. *Id.* Miller then asserted that her total damages amounted to $28,857.76. *Id.*

According to defendant, on March 13, 2019, Target requested that Miller admit that the damages arising out of the incident did

not exceed the total sum of $75,000 exclusive of interest and costs. *Id.* at 4. On June 12, 2019, plaintiff responded that she could neither deny nor admit that her damages did not exceed this amount as discovery and treatment were ongoing. *Id.*

Two months thereafter, Target avers that it requested from Miller a settlement demand no less than five times but without success. *Id.* Thus, on October 1, 2019, Target served a second Request for Admissions, asking Miller to once again admit or deny that the damages complained of did not exceed $75,000. *Id.* Plaintiff failed to respond to the second request by the November 1, 2019 deadline, which defendant posits was an admission that damages did not exceed $75,000 pursuant to Louisiana Code of Civil Procedure article 1467. *Id.*

Defendant claims to have requested a settlement demand from plaintiff on multiple occasions thereafter until it received a demand dated August 25, 2020 in the amount of $335,691 on August 31, 2020. *Id.*

On September 14, 2020, Target removed the matter to this Court, alleging that subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332. Rec. Doc. 1 at 2. First, defendant asserts that there is complete diversity between the parties. *Id.* at 6. Specifically, defendant is a foreign corporation organized under the laws of the state of Minnesota with its principal place of business in Minneapolis, and plaintiff is a resident and

domiciliary of the state of Louisiana. *Id.* Second, defendant argues that the matter in controversy exceeds the statutory threshold. *Id.* at 8. Defendant further argues that the August 25, 2020 demand constitutes an "other paper" containing evidence of damages in excess of $75,000 that permits removal within thirty days of receipt. *Id.* at 5.

On October 13, 2020, plaintiff filed a motion to remand, generally alleging that the defendant did not timely file its notice of removal. Rec. Doc. 5.

On November 2, 2020, defendant timely filed its opposition, alleging that plaintiff's bad faith caused its non-compliance with the removal deadline. Rec. Doc. 6.

## LAW AND ANALYSIS

Federal district courts have original jurisdiction over all civil actions where the amount in controversy exceeds $75,000 and complete diversity of citizenship exists between the parties. 28 U.S.C. §1332(a). If a civil action over which a district court has original jurisdiction is brought in a state court, it "may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). A removing defendant must file a notice of removal pursuant to 28 U.S.C. §1446.

Generally,

> [t]he notice of a removal of a civil action or proceeding
> shall be filed within 30 days after the receipt by the
> defendant, through service or otherwise, of a copy of
> the initial pleading setting forth the claim for relief
> upon which such action or proceeding is based.

28 U.S.C. § 1446(b)(1). However,

> if the case stated by the initial pleading is not
> removable, a notice of removal may be filed within 30
> days after receipt by the defendant, through service or
> otherwise, of a copy of an amended pleading, motion,
> order *or other paper* from which it may first be
> ascertained that the case is one which is or has become
> removable.

28 U.S.C. § 1446(b)(3)(emphasis added). As such, the removing party bears the burden of showing that removal was proper, and any ambiguities are to be strictly construed in favor of remand. *See Manguno v. Prudential Prop. & Cas. Ins. Co.,* 276 F.3d 720, 722 (5th Cir. 2002).

Where the plaintiff alleges an indeterminate amount of damages in her complaint, the defendant must prove by a preponderance of the evidence that the jurisdictional amount is in excess of $75,000. *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999). The removing party may do so by either (1) demonstrating that it is "facially apparent" that the claims are greater than $75,000 or (2) or by offering evidence that the requisite amount in controversy is met. *Id.* (quoting *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).

It is undisputed in the instant matter that complete diversity exists between the parties. Rather, the main dispute arising from the pending motion pertains to whether defendant timely removed this suit.

**A. The State Complaint**

Ordinarily, if a plaintiff alleges damages in her state complaint less than the jurisdictional threshold, this sum shall control and bar removal. *Espadron v. State Farm Mut. Auto. Ins. Co.*, No. 10-0053, 2010 WL 3168417, at *1 (E.D.La. Aug. 9, 2010). However, the court's analysis to determine the controlling amount in controversy differs "where the relevant complaint originates in a state that does not bind a plaintiff to the amount of damages alleged in his complaint." *Id.* at *2.

Louisiana is an example of such a state because a final judgment under Louisiana law may grant relief to the prevailing party that was not originally requested. *Id.* (citing La. Code Civ. Proc. Art. 862). Moreover, Louisiana Code of Civil Procedure article 893 states, "if a specific amount of damages is necessary to establish that jurisdiction of the court . . . [or] the lack of jurisdiction of federal courts due to insufficiency of damages . . . a general allegation that the claim exceeds or is less than the requisite amount is required." La. Civ. Code Civ. Proc. Art. 893. "Therefore, as a matter of law, plaintiffs filing suit in Louisiana state courts allege an indeterminate amount of damages,

unless they affirmatively renounce their right to recover damages in excess of $75,000." *Espadron,* 2010 WL 3168417, at *1 (citing *Jacobs v. Dun & Bradstreet, Inc.*, No. 08-3592, 2009 WL 211098, at *2 (E.D.La. Jan. 27, 2009); *Levith v. State Farm Fire & Cas. Co.*, No. 06-2786, 2006 WL 2947906, at *2 (E.D.La. Oct. 11, 2006)).

In *Raborn*, the court found that the plaintiff's damages, if proven, likely exceeded $75,000 based on her initial allegations of sustaining severe and permanent injuries and her extensive prayer for relief. *Raborn v. Con-Workload, Inc.*, No. 15-2969, 2015 WL 6738599, at *3 (E.D.La. Nov. 4, 2015).[1] Like here, the plaintiff alleged that damages exceeded the $50,000 threshold to secure a jury trial in Louisiana. *Id.* at *2. The court found that plaintiff's omission of a denial to stipulate to a sum less than $75,000 alongside the extensive prayer for damages and pre-petition settlement letter demanding $256,005 weighed in favor of denying the motion to remand. *Id.* at *4.

Plaintiff claims that she sufficiently alleged damages likely in excess of $50,000 that would have allowed defendant to remove the matter. Rec. Doc. 5-1 at 2. In her original state complaint, plaintiff alleges "severe and painful personal injuries" as a result of the alleged accident. Rec. Doc. 1-6 at 4. Additionally,

---

[1] "Courts in this circuit have consistently held that such prayers for damages – namely, those for past and future medical expenses, past and future lost wages, past and future pain and suffering, and past and future disability – are sufficient to infer the jurisdictional amount is satisfied." *Id.*

Miller itemized her damages to include "past, present and future physical and mental pain and suffering; medical expenses, past and future; and lost wages and loss of earning capacity." *Id.* Notably, plaintiff did not explicitly stipulate in her state complaint that her damages did not exceed $75,000.

Miller's listed damages in her state complaint do not establish that they were greater than the jurisdictional threshold. Unlike the plaintiff in *Raborn,* the damages as alleged in the initial pleading alone do not illustrate the supposed severity of Miller's injuries that would sustain subject matter jurisdiction. The general allegation that Miller's damages likely exceeded $50,000 in accordance with Art. 893 without elaboration on the nature and amount of damages sought also does not satisfy the amount in controversy. Therefore, Miller's argument that the state complaint was "clearly removable" is without merit, and Target's failure to timely remove the suit after receipt of the state complaint does not foreclose our analysis.

**B. "Other Papers" Demonstrating Removability**

If the initial pleading was not removable, 28 U.S.C. § 1446(b) nevertheless permits the defendant to remove the case beyond the complaint upon receipt of a document, or "other paper", indicating removability. 28 U.S.C. § 1446(b). A 2012 provision to the removal statute provides that information in discovery responses demonstrating the amount in controversy shall be treated as an

"other paper". *Ameri v. J.C. Penney Corp., Inc.*, No. 12-cv-2630, 2012 WL 5866493, at *2 (W.D.La. Nov. 19, 2012)(citing 28 U.S.C. § 1446(c)(3)(A)). A deposition transcript revealing removability may also be considered "other paper." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.2d 489, 492 (5th Cir. 1996).

The Fifth Circuit has cautioned that the removal standard applied to other papers "seems to require a greater level of certainty or that the facts supporting removability be stated unequivocally." *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002). Further, "[o]ther paper describing injuries and other damages that seem likely to exceed the amount in controversy requirement, but which do not show unequivocally that the requirement is met, are insufficient to trigger the removal clock." *Darensburg v. NGM Ins. Co.*, No. 14-1391, 2014 WL 4072128, at *3 (E.D.La. Aug. 13, 2014).

Surgical recommendation for plaintiff's back injuries can be a key factor in determining whether there are sufficient damages to support diversity jurisdiction. *Espadron*, 2010 WL 3168417 at *3. For example, in *Meeks*, the plaintiff attempted to argue that the defendant should have removed the suit upon receipt of his medical records. *Meeks v. Jazz Casino Co., LLC*, No. 19-13238, 2020 WL 359204, at *2 (E.D.La. Jan. 21, 2020)(denying remand). The records contained the doctor's diagnosis of a lumbar disc herniation, lumbar spinal stenosis, lumbar radiculopathy, annular

tear of lumbar disc, lumbar facet arthropathy, cervicalgia, and cervical radiculopathy and a recommendation for plaintiff to receive a lumbar epidural injection. *Id.* The court noted that surgery was not yet recommended, and the combined medical bills totaled $12,700. *Id.* Thus, the court found that this information was "insufficient to rise to the level of unequivocally clear and certain evidence." *Id.* (internal quotes omitted).

Similarly, in *Profit v. IAT Insurance* Group, the plaintiff contended that defendants received sufficient information from her medical records to ascertain the amount in controversy. *Profit v. IAT Insurance Group*, No. 18-10897, 2019 WL 1349846, at *2 (E.D.La. March 26, 2019)(denying remand). The relevant documents revealed information about plaintiff's lower back pain, neck pain, failed conservative treatment, referral for pain management, referral for a shoulder MRI, and the doctor's recommendation to proceed with cervical epidural steroid injections. *Id.* Noting that these records reflected medical bills totaling $11,328.30 without a surgical recommendation at the time, the court held that it was not yet "unequivocally clear and certain" that the amount in controversy exceeded $75,000. *Id.* The court found that the jurisdictional minimum was ultimately satisfied by plaintiff's subsequent settlement demand in the amount of $225,000, indicating that plaintiff received surgical recommendation. *Id.*

Plaintiff's medical records and response to defendant's Interrogatories and Request for Production of Documents on February 5, 2019 indicated the following:

- Plaintiff was treated at Advanced Medical Center in Gretna.

- Plaintiff was referred to and seen by a neurosurgeon at LSU Healthcare Network who referred plaintiff to another doctor at Louisiana Pain Specialists for injections.

- The doctor at Louisiana Pain Specialists performed a lumbar ESI (epidural steroid injection) and scheduled a second procedure for July 2018.

- The lumbar MRI report dated February 12, 2018 indicated, "Left central to left neural foraminal disc herniatioposterior central to left central annular fissure/tear, and minor facet arthropathy on the left at L5- S1 with approximately 33 percent central canal narrowing, especially towards the left, posterior displacement of the traversing left S1 nerve root, and 1nodera.te bilateral subarticular canal narrowing and left neural foraminal narrowing, including contact of the left more than right exiting L5 nerve roots."

- Plaintiff received three more epidural steroid injections between June 5, 2018 and August 27, 2018.

- Plaintiff was prescribed oral medication Meloxicam, which is an anti-inflammatory, and Baclofen for muscle spasms.[2]

Plaintiff argues that this information was sufficient for defendant to ascertain that the pending matter was removable per 28 U.S.C. § 1446(b). Rec. Doc. 5-1 at 2-3.

During her February 19, 2020 deposition, plaintiff testified to the time periods and nature of the steroid injections she received to her thighs and hips. Rec. Doc. 5-1 at 4. Miller also testified that she was diagnosed with having a herniated disc, a sacroiliac joint dysfunction and a trochanteric bursitis. *Id.* Lastly, plaintiff confirmed that she would have to receive future treatment for her injuries. *Id.* at 5.

In *Scott*, the court found that removing defendants "are not held to a due diligence standard" to determine the amount in controversy based upon a doctor's characterization of plaintiff's injuries and the amount of steroid injections she received. *Scott v. Office Depot, Inc.*, No. 14-791-JJB-RLB, 2015 WL 2137458, at *5 (M.D.La. May 7, 2015). Although the plaintiff's discovery responses and deposition testimony were not "unequivocally clear and certain" to trigger the removal period, the *Scott* Court found that plaintiff's post-petition settlement demand of $300,000 satisfied the amount in controversy requirement. *Id.*

---

[2] *See* Rec. Doc. 5-1 at 2-3.

Miller's deposition testimony regarding the nature of her injuries, steroid injections received, past and future treatment, and medical records, combined with her jury trial threshold allegations, reasonably show satisfaction with the federal threshold.

**C. Whether Plaintiff Acted in Bad Faith**

The Fifth Circuit held that a post-petition settlement demand requesting damages exceeding the federal jurisdictional minimum is an "other paper" pursuant to 28 U.S.C. § 1446(b). *Addo v. Globe Life and Acc. Ins. Co.*, 230 F.3d 759, 762 (5th Cir. 2000).

Defendant argues without opposition that plaintiff's settlement demand in the amount of $335,691 qualifies as an "other paper", upon which defendant relied to remove the instant suit. Rec. Doc. 6-6 at 1. However, because the notice of removal was filed outside the one-year removal period, the parties dispute whether the notice was timely filed.

When the suit is removed beyond the one-year period, the removing party is required to not only prove removability but also the plaintiff's bad faith in preventing removal during the one-year period. *Rantz v. Shield Coat, Inc.*, No. 17-3338, 2017 WL 3188415, at *4 (E.D.La. July 26, 2017); *see* 28 U.S.C. § 1446(c)(1). A plaintiff's bad faith can be evidenced by her "deliberate[ ] fail[ure] to disclose the actual amount in controversy to prevent removal." 28 U.S.C. § 1446(c)(1)(B). "Ultimately, the burden of

13

showing that plaintiff[ ]acted in bad faith to prevent removal lies with the removing defendant." *Jones v. Ramos Trinidad*, 380 F. Supp. 3d 516, 521 (5th Cir. 2019).

Although the Fifth Circuit held that the *Tedford* equitable tolling standard no longer applies to determine a plaintiff's bad faith to prevent removal, it has not yet provided a clear standard under Section 1446(c)(1). *See Hoyt v. Lane Constr. Co.*, 927 F.3d 287, 293 (5th Cir. 2019). Courts have nonetheless tailored their inquiry "on what motivated the plaintiff in the past and whether the plaintiff's litigation conduct was meant to prevent removal." *TK Trailer Parts, LLC v. Long*, No. 4:20-cv-2864, 2020 WL 6747987, at *5 (S.D.Tex. Nov. 2, 2020)(citing *Barra v. Rayborn Trucking,* No. 19-13235, 2019 WL 6838611, at *4 (E.D.La. Dec. 16, 2019)).

Target alleges bad faith on Miller's part based on her failure to admit the amount in controversy to the two requests for admission, effectively admitting that the amount in controversy was less than the permitted jurisdictional amount, and seeking damages in excess of federal jurisdiction after the removal period had passed. Rec. Doc. 6 at 11.

Louisiana Code of Civil Procedure article 1467 provides that a request for admission that goes unanswered after fifteen days of service will be deemed admitted. *See* La. Code Civ. Proc. Art. 1467(A). Under such a scenario, courts have acknowledged that an unanswered request would render the statement admitted, but "such

admissions are only one factor a court may consider when determining whether the amount in controversy is sufficient to support federal jurisdiction." *DeJean v. Mars Wrigley Confectionery*, No. 20-623-SDD-EWD, 2020 WL 5900137, at *2 (M.D.La. Oct. 5, 2020)(citing *Jones v. AAA Club Family Ins. Co.*, No. 07-6988, 2007 WL 4365443, at *1 (E.D.La. Dec. 10, 2007)("[Plaintiff's] failure to answer [request for admission] cannot support this Court's subject matter jurisdiction alone because it represents another form of the parties' consent to jurisdiction, which is not allowed.")). This is in accordance with the jurisdictional principle that "litigants cannot bestow subject matter jurisdiction on federal courts by waiver or consent." *Id.*

Another relevant factor to consider is the plaintiff's failure to participate in settlement discussions. In *Darensburg*, the court denied plaintiff's motion to remand because she refused to provide the defendants an estimate of her damages and only sent piecemeal medical records. *Darensburg*, 2014 WL 4072128 at *4. The court reasoned that "plaintiff should not be permitted to benefit from her vague (or nonexistent) responses to [d]efendants' several inquiries [for damages]." *Id.*

Although Miller sought to describe her medical condition to Target, in neither her discovery responses nor her deposition did Miller ever expressly allege that her damages were greater than $75,000. Target further argues that Miller's failure to respond to

its requests for a settlement demand hindered its ability to remove the matter within the one-year period. Rec. Doc. 6 at 10. Both plaintiff's failure to discuss, much less admit, the amount in controversy and her legal admission that her damages did not exceed $75,000 are relevant considerations in weighing bad faith. However, the relatively limited caselaw on the bad faith exception indicate that Miller's conduct is nonetheless insufficient to meet Target's burden.

In *Wilson*, the defendant made several attempts to determine the amount in controversy that went either unanswered or without a conclusive response due to the plaintiff's ongoing medical treatment. *Wilson v. Fresh Market, Inc.*, No. 19-cv-81037-Dimitrouleas/Matthewman, 2020 WL 355192, at *2 (S.D.Fla. Jan. 3, 2020). Despite the plaintiff's "noncommittal" discovery responses and "lavish" settlement letter nine months following the removal deadline, the court found that the plaintiff's conduct did not amount to a "strategic gamesmanship" attempt to prevent removal. *Id.* at *5-6.[3] The court reasoned, "it [wa]s clear from the record and testimony that the amount in controversy based on [p]laintiff's

---

[3] "For example, courts routinely find bad faith where plaintiffs seek to amend their complaints after the one-year removal window has expired to claim damages more than $75,000; affirmatively disavow damages above $75,000 and then send a demand letter immediately after the one-year window closed; intentionally delay accepting settlement offers from non-diverse defendants; or wholly refuse to respond to discovery requests regarding damages. What these cases share are clear attempts at strategic gamesmanship." *Wilson*, 2020 WL 355192 at *5 (internal citations omitted).

medical bills *never* approached $75,000 at any point during the one-year period." *Id.* at *6.

Similarly, in *Boney*, the defendant alleged that the plaintiff acted in bad faith to conceal his amount of damages based on his medical bills, settlement discussions and an unanswered email requesting that he stipulate to damages below the federal jurisdictional amount. *Boney v. Lowe's Home Centers LLC*, No. 3:19-CV-1211-S, 2019 WL 5579206, at *2 (N.D.Tex. Oct. 29, 2019). The court disagreed and declined to "infer bad faith" from evidence that was "neither an admission that the amount in controversy [was] less than $75,000. . .nor indicative of active concealment." *Id.*

Target argues that Miller deliberately concealed her sum of damages based on her failure to admit the amount in controversy and participate in settlement discussions until the one-year removal period accrued. Rec. Doc. 6 at 11. Although these are relevant considerations of bad faith, defendant had sufficient information that Miller's damages exceeded $75,000. The "Past Medical Summary" alone totaled $45,491. Rec. Doc. 1-6 at 3. We cannot infer bad faith based on defendant's allegations without adequate evidence of plaintiff's intentional concealment.

Defendant failed to proffer sufficient evidence showing that plaintiff not only knew that her damages exceeded $75,000 but that she also deliberately concealed that fact. Therefore, because any ambiguities must be construed in favor of remand, the bad faith

exception under 28 U.S.C. § 1446(c) has not been shown applicable, and defendant's notice of removal was untimely.

New Orleans, Louisiana this 8th day of April, 2021

_____

SENIOR UNITED STATES DISTRICT JUDGE